IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Angela Marie Hodges, ) | **Case No:** 2:22-cv-04515-RMG-SVH |
| Plaintiff, ) | |
| vs. ) | **COMPLAINT** |
| ) | **(JURY TRIAL REQUESTED)** |
| Meyer Enterprises, Inc., ) | |
| Defendant. ) | |

## JURISDICTION AND VENUE

1.  Plaintiff is a citizen and resident of the State of South Carolina, County of Dorchester and a former employee of Defendant.

2.  Defendant is a for-profit corporation doing business and in the State of South Carolina, County of Dorchester.

3.  At all times pertinent to this Complaint, Defendant conducted business in St. George, South Carolina.

4.  Defendant employs more than fifteen employees and is engaged in an industry affecting commerce. At all times material herein, Defendant was an "employer" within the meaning of 42 U.S.C. §12111 and 42 U.S.C. §2000(e).

5.  Plaintiff was an employee of Defendant from August of 2020 to May 13, 2021.

6.  Throughout the entirety of her employment with Defendant, Plaintiff worked in St. George, South Carolina.

1

7. All actions pertinent to the allegations in this Complaint took place in the Charleston Division of the South Carolina District. Presently and at all times, Defendant has conducted substantial, continuous and systematic commercial activities in this District.

8. This action arises under the Americans with Disabilities Act and its Amendments, 42 U.S.C. § 12101 *et seq*., Title VII of the 1964 Civil Rights Act and 42 U.S.C. § 2000(e) *et seq*., as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000(e) *et seq*., as amended, 42 U.S.C. § 1988 (b), and South Carolina common law.

9. Jurisdiction and venue are proper in this Court pursuant to 28 U.S.C. § 1331 (Federal Question), 28 U.S.C. §1343, 28 U.S.C. § 1367, and 28 U.S.C. § 1391(b) and (c).

10. Plaintiff has exhausted all of her requisite administrative remedies and has filed this Complaint within ninety (90) days of her receipt of a Notice of Right to Sue from the Equal Employment Opportunity Commission, received on September 29, 2022. (Exhibit A.)

**FACTS**

11. Defendant provides packaging and trucking services, specifically FedEx Ground and Home Delivery shipments.

12. Plaintiff was hired by Defendant in August of 2020 as a Driver.

13. Plaintiff was reliable, worked hard, and often covered extra shifts for Defendant.

14. In November of 2020, Plaintiff temporarily quit working for Defendant when Defendant abruptly changed her schedule on several occasions, which interfered with her second job as a First Responder.

15. Several days later, Plaintiff agreed to return to work after Defendant offered her a different position and agreed to provide a consistent schedule.

16. In December of 2020, Defendant gave Plaintiff an MVP award, a $50 premium, and a bonus to reward her for her hard work.

17. In March of 2021, Plaintiff needed surgery related to a physical disability which substantially limited several of her major life activities.

18. One of the supervisors who worked for Defendant (Tiffany) begged Plaintiff to come back to work as soon as possible after surgery because "none of the other employees could run a route as well as [Plaintiff]." The supervisor promised to try to provide an accommodation to Plaintiff. Plaintiff agreed to come back to work less than a week after her surgery.

19. When Plaintiff returned to work after her surgery, she requested an accommodation in the form of a "jumper" to assist her with carrying and lifting packages and to comply with medical restrictions related to the surgery and disability.

20. Defendant initially provided a jumper to Plaintiff as an accommodation.

21. During a follow up doctor's appointment on April 12, 2021, Plaintiff's doctor recommended continued accommodations for Plaintiff but, upon Plaintiff's return to work the same day, Defendant denied Plaintiff's request for a reasonable accommodation and told her to "stay home."

22. Defendant did not engage in a good faith interactive process to identify possible accommodations for Plaintiff or to determine whether Plaintiff's requested accommodation was reasonable.

23. As a result of Defendant's decision to deny Plaintiff's request for a reasonable accommodation, Plaintiff was denied the ability to work or earn income from Defendant.

24. On May 12, 2021, Plaintiff's doctor cleared her to return to work without restrictions.

25. This same day, Plaintiff met Moses Ford (a co-worker) and David Newman (Defendant's Managing Director) for lunch at Georgio's restaurant in St. George, South Carolina.

26. During lunch on May 12, 2021, Mr. Newman told Plaintiff she still had her same position and route waiting for her. Mr. Newman communicated to Plaintiff that the employee who had been covering her route was not a hard worker and was not able to accomplish as many pickups and deliveries as Plaintiff.

27. The next morning, Plaintiff reported to work.

28. As Plaintiff was preparing to begin work, her manager (Kanstantstin Yakabau) walked over to where she was standing and told her that her old route was "not her route anymore" and Defendant "didn't have a position or route for her so she needed to go home."

29. Mr. Yakabau further communicated that Phil Buie told him the reason Plaintiff no longer had a position with Defendant was because there had been too many complaints about her.

30. Upon information and belief, there were no complaints in Plaintiff's personnel file.

31. Plaintiff had successfully performed her job duties for several months prior to her surgery and request for an accommodation, yet Defendant gave Plaintiff's job to a white, male employee and terminated Plaintiff.

32. When Plaintiff returned her uniforms after being terminated on May 13, 2021, Defendant's Human Resources Director, Holly Meyer, stated "I'm sorry we failed you so many times."

33. One of Defendant's Directors and Defendant's HR Manager resigned within several months after Defendant terminated Plaintiff.

34. Shortly after being terminated, Plaintiff had a conversation with Moses Ford (who was still an employee of Defendant). The conversation was witnessed by one of the First Responders who worked with Plaintiff.

35. During the conversation, Mr. Ford stated that Defendant terminated Plaintiff's employment because Plaintiff was a black female. Mr. Ford also stated that he previously heard Kanstantstin Yakabau state that he planned to terminate Plaintiff's employment because he didn't want any other females in the area he managed.

36. After being terminated, Plaintiff also had an in-person conversation with Mr. Newman.

37. During the conversation with Mr. Newman on May 14, 2021, Plaintiff asked Mr. Newman if he agreed to terminate her and Mr. Newman stated that it was "out of his hands." Mr. Newman stated that Phil Buie told him a customer made a complaint about Plaintiff.

38. Mr. Buie's statement about Plaintiff was false and defamatory.

39. During the conversation with Plaintiff, Mr. Newman appeared to know that Mr. Buie's statement was false but stated that he was unwilling to let Plaintiff rebut the accusation to try to get her job back.

40. Mr. Newman stated that the employee currently performing the route previously performed by Plaintiff could only do half of the work Plaintiff had been doing.

41. Defendant terminated Plaintiff based on a fabricated complaint and in retaliation for her request for an accommodation.

42. Additionally, Defendant's agent admitted that Plaintiff's termination was because of her race and gender.

43. Such unlawful actions, omissions, and decisions on the part of Defendant were done in a knowing, willful, wanton, malicious, reckless and bad faith manner, and violated Plaintiff's clearly established legal rights and privileges of which a reasonable person would have been aware.

44. As a result of Defendant's actions, Plaintiff suffered damages in the form of lost back and future wages and benefits, emotional distress, humiliation and embarrassment, inconvenience, loss of enjoyment of life, physical injuries, reputational damages, lost future job opportunities, compensatory damages, punitive damages, attorney's fees, and costs.

**FIRST CAUSE OF ACTION**
**(Americans With Disabilities Act – Failure to Provide Reasonable Accommodation)**

45. Each and every allegation set forth above is hereby repeated as fully incorporated herein.

46. Plaintiff is a disabled individual within the meaning of the ADA.

47. After Plaintiff returned from surgery related to her disability in March of 2021, Defendant initially provided Plaintiff with a reasonable accommodation.

48. Several weeks later, Defendant refused to provide Plaintiff with the same accommodation and also refused to engage in a good faith discussion with Plaintiff regarding other potential accommodations despite the fact that Plaintiff had previously performed the essential functions her job with a reasonable accommodation.

49. Defendant refused to accommodate Plaintiff, refused to allow Plaintiff to work, and told Plaintiff to go home. Defendant never allowed Plaintiff to return to work, ultimately resulting in her termination.

50. Defendant acted in bad faith in failing to provide Plaintiff with a reasonable accommodation that would have permitted her to continue working.

51. Plaintiff suffered damages as a result of Defendant's actions.

52. Plaintiff seeks damages for back pay, front pay, emotional distress, humiliation and embarrassment, attorney fees and costs, prejudgment interest, post judgment interest and punitive damages.

## SECOND CAUSE OF ACTION
### (Americans With Disabilities Act – Discrimination)

53. Each and every allegation set forth above is hereby repeated as fully incorporated herein.

54. Plaintiff is a disabled individual and required surgery related to her disability in March of 2021.

55. Although Plaintiff's doctor released Plaintiff to return to work with an accommodation in April of 2021, Defendant refused to allow Plaintiff to return to work and refused to provide an accommodation to Plaintiff.

56. Plaintiff attempted to return to work in May of 2021 after fully recovering from her surgery and after her doctor had released all medical restrictions but Defendant refused to allow Plaintiff to return to work and terminated her employment.

57. Defendant discriminated against Plaintiff because of her disability and acted in bad faith in failing to allow Plaintiff to return to her job.

58. Plaintiff suffered damages as a result of Defendant's actions.

59. Plaintiff seeks damages for back pay, front pay, emotional distress, humiliation and embarrassment, attorney fees and costs, prejudgment interest, post judgment interest and punitive damages.

## THIRD CAUSE OF ACTION
### (Defamation)

60. Plaintiff incorporates all prior allegations, where not inconsistent, as if fully set forth herein.

61. Defendant, through its employees and agents, published false and defamatory statements about Plaintiff to multiple employees, including the employees specified in this Complaint.

62. In May of 2021, one of Defendant's supervisory employees, acting on behalf of Defendant, stated to multiple other employees that a customer made a complaint about Plaintiff and there were too many complaints about Plaintiff. Defendant stated unnecessary details about the alleged customer complaint and the details inferred Plaintiff was involved in illegal drug use.

63. Defendant's statements were defamatory, false, and inferred that Plaintiff was unfit for her profession.

64. Defendant took no action to investigate, mitigate, or correct these statements.

65. Defendant's statements are defamation per se.

66. Defendant's statements exceeded the scope of any intra-corporate privilege they may have had based on the scope, timing, and audience of the statements.

67. Defendant's statements were unnecessary and not privileged and/or exceeded any qualified privilege.

68. The publication and re-publication of these false statements have caused Plaintiff to suffer general damages, and special damages including pain and mental anguish, damage to her personal and professional reputation, and difficulty obtaining future employment.

69. Plaintiff has suffered damages in the form of lost back and future wages, lost income and benefits, severe psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, physical

injuries, loss of reputation, and loss of future job opportunities and further seeks costs of this action and post judgment interest.

## FOURTH CAUSE OF ACTION
### (Race Discrimination in Violation of Title VII)

70. Plaintiff incorporates all prior allegations, where not inconsistent, as if fully set forth herein.

71. Plaintiff is a member of a protected class (African American).

72. Plaintiff was subjected to discrimination based on her race by Defendant.

73. Plaintiff's job was given to an employee outside Plaintiff's protected class despite Defendant's admission that Plaintiff performed the job better than the other employee.

74. Plaintiff's employment was terminated because of her race.

75. Plaintiff's performance was better than the performance of a similarly situated employee outside her protected class, but Defendant gave the similarly situated employee Plaintiff's job and route and terminated Plaintiff's employment.

76. Plaintiff's work performance met Defendant's expectations before Plaintiff was terminated.

77. Upon information and belief, Plaintiff was replaced by an employee outside her protected class with fewer qualifications than Plaintiff.

78. Plaintiff was qualified for the position she held with Defendant and was often praised for her commendable performance.

79. Plaintiff received awards and bonuses during her employment.

80. Defendant stated a pretextual reason for Plaintiff's termination.

81. The circumstances surrounding Plaintiff's termination infer the real reason for her termination was her race.

82. Plaintiff was discriminated against based on her race and is entitled to damages.

83. The discriminatory actions, omissions and decisions by Defendant against Plaintiff were designed to cause and will continue to cause Plaintiff to lose wages, compensation, entitlements and other rights.  In addition, Plaintiff has suffered humiliation and harm to her reputation, emotional and mental injuries, pain and suffering, financial and other adverse consequences for which she seeks full damages and make whole relief.

### FIFTH CAUSE OF ACTION
### (Gender Discrimination in Violation of Title VII)

84. Plaintiff incorporates the allegations set forth above as if fully restated herein.

85. Plaintiff, a female, is a member of a protected class.

86. Plaintiff was subjected to discrimination based on her gender by Defendant.

87. Plaintiff's job was given to a male employee despite Defendant's admission that Plaintiff performed the job better than the male employee.

88. Plaintiff's employment was terminated because of her gender.

89. Plaintiff's performance was better than the performance of a similarly situated male employee, but Defendant gave the similarly situated male employee Plaintiff's job and route and terminated Plaintiff's employment.

90. Plaintiff's work performance met Defendant's expectations before Plaintiff was terminated.

91. Upon information and belief, Plaintiff was replaced by a male employee with fewer qualifications than Plaintiff.

92. Plaintiff was qualified for the position she held with Defendant and was often praised for her commendable performance.

93. Plaintiff received awards and bonuses during her employment.

94. Defendant stated a pretextual reason for Plaintiff's termination.

95. The circumstances surrounding Plaintiff's termination infer the real reason for her termination was her gender.

96. Plaintiff was discriminated against based on her gender and is entitled to damages.

97. The discriminatory actions, omissions and decisions by Defendant against Plaintiff were designed to cause and will continue to cause Plaintiff to lose wages, compensation, entitlements and other rights. In addition, Plaintiff has suffered humiliation and harm to her reputation, emotional and mental injuries, pain and suffering, financial and other adverse consequences for which she seeks full damages and make whole relief

Wherefore, having fully stated her Complaint against Defendant, Plaintiff prays for all available relief, including an award of lost wages, benefits, and other earnings, front pay, damages for emotional distress, humiliation, and embarrassment, as well as other actual, consequential, compensatory, and punitive damages resulting from Defendant's conduct complained of herein, and all other legal and equitable relief as the Court deems appropriate, including but not limited to the costs of this action, attorneys' fees, and pre-judgment and post-judgement interest.

BLOODGOOD & SANDERS, LLC

s/Lucy C. Sanders
Lucy C. Sanders, Federal Bar No.: 10834
242 Mathis Ferry Road, Suite 201
Mt. Pleasant, SC 29464
Telephone: (843) 972-0313
Email: lsanders@bloodgoodsanders.com
*Attorneys for Plaintiff*

Charleston, South Carolina

Date: December 14, 2022